will be a matter under advisement. Thank you. On to the next place Ursеньkski vs Williams May I please the court Jeffrey Theodore for plaintiff appellant Charles Ursеньkski I'd like to reserve five minutes for rebuttal very well In this case a prisoner who was never convicted of a sex offense has been branded as a sex offender and required to take sex offender treatment without any process or a hearing. Four circuits have held that in this circumstance due process including a hearing is required. Those holdings follow the Supreme Court's decision in Vitek which held that a prisoner is entitled to due process before he is subjected to mental treatment. The two other circuit cases on which defendants rely are distinguishable because the analysis in both turned on reputational harm alone. So there is no authority to the contrary for the proposition that a combination of a sex offender designation and required sex offender treatment does not create a liberty interest. In particular the Seventh Circuit case does mention treatment programs but the plaintiff's complaint in that case is that that's the Grineer case. Your Honor from the Seventh Circuit in that case the plaintiff's complaint was that he has a liberty interest arising from the stigma of the sex offender label and the denial of his parole. As a result the Seventh Circuit's analysis did not turn on the question of whether the combination of stigma and compelled treatment in a sex sex offender therapeutic program gives rise to a liberty interest. Is that alone sufficient Mr. Theodore? Is it the stigma and participation in a behavioral treatment type program sufficient? Yes, Your Honor. To bring in 14th Amendment due process concerns? Yes, Your Honor. It's the combination of the stigma and the alteration in status required by a mandatory sex offender treatment program. Well, there are some cases that say, you know, that parole may also, if there is a denial of parole for failure to participate in the program, then you're entitled to due process notice and hearing. Well, the police, Your Honor, have argued, have tried to distinguish some of the cases on which we rely by reference to parole, but in those cases parole was not the basis for the liberty interest. So in every case that you have a drug offense or a drug component to an offense, the stigma and a requirement to participate in some behavioral program, you're entitled to notice and a hearing? No, Your Honor. Not in every drug case. I think that the stigma from a sex offender status is so particularly severe that it sets it apart from other situations of, say, like alcoholism or a drug conviction. And that's why you see there is authority from other circuits. Counsel, Counsel, Mr. Theodore, where, in what environment is the stigma attached where you have a person who's under sentence without possibility of parole? Well, the stigma. Would that be then that the stigma has to be in the settled environment of the prison? Well, I think the stigma within the prison is extremely severe, Your Honor. I think I cited in the fact section of our opening brief, there's some studies cited which found that within prison being called a sex offender is perhaps the most stigmatizing label available. And even outside prison, of course, being called a sex offender is extremely stigmatizing, as shown by the proliferation of Megan's Laws and registration programs. But in prison, I think the stigma is even more severe. There's two studies. One indicates that your chance of being a sexual assault victim in prison is increased by 50% if you are a sex offender. Another found that it's increased by 33% if you're a sex offender. Another study surveyed prisoners and asked for their views as to sort of where the prison hierarchy among prisoners, people with different crimes, fell. It asked about six crimes that did not involve a sex offense, four crimes that did involve a sex offense. The four crimes with a sex offense were at the bottom, even notwithstanding the fact that they were sometimes in combination with another crime. So, for example, it found that the crime that put you at the top of the prison hierarchy in combination with a sex offense would drop you below every other potential crime except for those also involving sex offenses. Okay, let's move to another expression. Sexual component. Are there any cases that discuss this at all as distinguished from a sexual offense? No, Your Honor. I think that's, I really think, an invention by defendants, first in the trial court and then here just for the purposes of this litigation. That language doesn't appear in any of the department's policies. It doesn't appear in any of the cases, nor was there, in fact, a sexual component to Renchensky's crime. He was convicted of murder. No sexual component was charged in the charging documents. Let me ask you this. In the autopsy, going back to the murder case, the basis of the sexual component was that his disturbing the genital area. And the breasts was that anti, before or after death in the autopsy report? You know, that autopsy report, Your Honor, the coroner's report has never been subject to any challenge or scrutiny. It's sitting there on the record, but it's scrutiny of that, which is what we're asking for in this proceeding. So I really couldn't tell you anything more about that autopsy report than what you see on the page. What type of hearing, what type of scrutiny do you contend should be required before an inmate can be labeled someone who should receive sexual offender treatment? Well, since the liberty interest in this case, the closest Supreme Court decision is the VTAC decision, Your Honor. We think that the procedures required in VTAC should also be required in this case. And the other circuits that have found a liberty interest in this situation have found it in reliance on VTAC. What is it about VTAC that brings your place within its ambit in terms of 14th Amendment protection? Well, so in VTAC, Your Honor, the Supreme Court found that the combination of stigma of defining someone as mentally... The stigma in that case was mental illness? The stigma of mental illness combined with compelled psychotherapeutic behavioral modification gave rise to a liberty interest. And so by analogy, the sex offender stigma argument is, of course, made by analogy to VTAC and has been made by analogy to VTAC by the 5th, 9th, 10th, and 11th circuits. So since that's where the analogy comes from, that's the most closely on point Supreme Court... I wonder how far we have. Supposing that I'm convicted of three burglaries and the reason for the conviction is because I need money to buy drugs. So I can be stigmatized as a dope addict in prison and I'm required to undergo drug treatment under the administration. Now, do I have 14th Amendment due process hearing rights? No. Again, Your Honor, I think drug treatment is just distinguishable from sex offender treatment just because being a drug addict is so much less stigmatizing. And frankly, in the prison context, probably so much more common by than being a sex offender. The sex offender, the stigma of being a sex offender is perhaps the highest possible stigma in a prison context. Why is that? Let me... OK, well, I would hope that we get into the Fifth Amendment. I think that is your stronger amendment argument in this situation. Well, let me quickly answer Judge Fuentes' question. I think you just said it's a question of what prisoners object to. I mean, I'm just looking at the studies and seeing what's been found. Even the prison culture doesn't tolerate sex offenders as much as other types of prisoners. Yes. And Judge Albasert, turning to the self-incrimination argument. What is the status of the appeal to the Superior Court in the post-conviction matter of the murder case? Your Honor, currently that's on appeal to the Pennsylvania Supreme Court. And the Pennsylvania Supreme Court previously reversed the Superior Court. And then the Superior Court made another decision. And then it's now back on appeal to the Pennsylvania Supreme Court. And then, of course, after he's exonerated... Is the defense there that I didn't do it? Yes, Your Honor. The claim is that he's not responsible for the murder itself. All right. Now, as I understand your brief, that in the process of the sex offender treatment, you have to admit that you committed this act. Is that right? That is correct, Your Honor. And, of course, admitting that he committed the sex act here would be, in essence, an admission to the underlying murder, which prejudices would prejudice him on his appeal and on retrial. So that's the basis for our claim. And just essentially the only issue in dispute here, Your Honor, as I understand it, is the question of whether the consequences imposed on him for refusing treatment rise to the level of compulsion. And we think here that they're significantly greater than those in McCune. In particular, the assignment to disciplinary custody for 90 days. What exactly... The state says that he doesn't have to undergo SOTP and nothing will happen to him if he doesn't. And you are saying he does. Can we get any resolution as to is there really going to be adverse action imposed if he doesn't undergo this treatment? Well, Your Honor, I think it's time. The appellees that the defendants suggest several times, suggest, imply that there won't be any consequences, but they never come out and actually say there won't be. And if you look at the record in this case, they have repeatedly told him that he is required to take sex offender treatment. If you look at their own disciplinary policy, it imposes several very substantial penalties for refusing to take treatment that's on your... Has he been assessed for whether he should be obligated to participate in the program? Well, the assessments, Your Honor, that they refer to are not to determine whether you ought to participate in the program. They're risk assessments. They determine whether you should be placed in low or moderate slash high intensity treatment. The assessments are not to determine whether you're a sex offender in the first instance. The determination that he should be, he should receive a behavioral modification is solely based on the sexual component of the underlying offense or conviction? The alleged, which has never, of course, he's never had an opportunity to even challenge that allegation. Okay. If there are no more questions, I'd like to reserve my time for rebuttal. We'll get you back on rebuttal. Mr. Poli? May it please the court, my name is Howard Hopkirk. I'm a senior deputy attorney general with the Pennsylvania Office of Attorney General. I represent the appellees in this case, the Pennsylvania Department of Corrections, and the name present and former officials of SCI Cole Township. Looks like I skipped a line, Mr. Hopkirk. I've been calling you by the next attorney. I'd like to ask you a very general question. The conviction in this case was in 1985, if I'm not mistaken, in a sentence. That's correct. So we're talking about 25 years ago. This defendant is never going to get out of prison. Now, I understand that behavioral modification is designed to allow reintegration of inmates back into society.  That would be a primary purpose. Primary purpose. There's also, I mean, he's going to be living in the prison system for quite some time. There's always the possibility that, you know, he could be pardoned or he could get out, but he does have to live with his fellow prisoners. And so let me put it this way. It's been 25 years and only now is he being seriously considered for sex-offended treatment. What is the penological interest in treating someone like this? Originally, in 1985, it was noted that there was this sexual component to his crime. At that time, the Department of Corrections treatment program and counseling for this type of thing was in its infancy and wasn't developed. You had a full program in 1999. But it was just getting started. It was over 11 years ago and he wasn't treated then. I mean, do you know from the record why this person, why in the year 2010, he has to undergo sex-offended treatment? Well, I think the psychologist, John Seidler, whose declaration is in the record, that's the major piece of evidence. And he goes over why it is important and why he has been assessed or earmarked for this type of treatment. The program, it's now just getting underway. This is a developing area, sex-offender treatment. Mr. Kirk, let me interject this right now. If this case goes to decision by us, we will have to make some determinations of sexual component. We will discuss in detail, putting aside for a moment the 14th Amendment, the Fifth Amendment, where this man is challenging the very crime for which he is serving this life sentence without possibility of parole. You, sir, are a senior deputy attorney general. I'm speaking only for myself. But I think that this is a case where you could go to the Department of Corrections and say, there's a judge on this panel who indicates that we will have to make some decisions that maybe we should not have with respect to sexual components and so forth. I just would make the suggestion that you go and suggest to the Department of Corrections that it is not worth it. Going back to my colleague, Judge Schuette, saying 25 years, then do this. I think society and the Corrections Department would be better off if we let this go away and you suggest that they terminate their efforts to have him participate in this program. Have you ever done that? I say that to you because you are a senior deputy attorney general. You can evaluate how the questions are coming to you and so forth. I think that everybody would be served to have this thing go away. I'm speaking from the standpoint of the government. We certainly have dialogues with the Department of Corrections. In this case, we believe it's the professional judgment of the Department and that they think this type of treatment is appropriate even for somebody who has been in prison as long as Mr. Renchensky. In the record, he has refused this type of assessment and treatment in the past. To say that at this point, we're just getting around to giving him treatment is not completely true. I would also like to point out that it's our position that this is legally, from the McCune Supreme Court decision standpoint, whether you look at Justice O'Connor's decision or the plurality decision in that case, that this is a voluntary choice by Mr. Renchensky. If he chooses, as he has up to this point, not to participate in sex offender treatment programs, then that is a voluntary choice. It is not compelled. Is it really a choice that he has? Doesn't he subject himself to a number of penalties, institutional penalties, for not cooperating or participating in a program that the Department of Corrections believes he should participate in? At this point, he hasn't received any sanctions. Hold on, sir. He hasn't received any sanctions. Do you mean to tell me that he will suffer no sanctions at all? Is that your representation, if he chooses not to participate in the program? I can't speak to that for the future. Then we can consider the sanctions that might be imposed, right? You're saying you can't guarantee he won't get sanctions. Isn't one of the possible sanctions the loss of his job? Isn't one of the possible sanctions the loss of the area of housing in the prison that he has? And those things were addressed in McCune, and they said that didn't rise to the level of compulsion. Well, that's the Fifth Amendment. And it also doesn't, under Sandin, doesn't rise to the level of a property or protected property or liberty interest. Now, I would say, I don't think we're talking about choice, not Fifth Amendment issues. Well, the Fifth Amendment is wrapped around the question of choice and whether, I mean, people are faced with different choices, but the question is, is it a compelled choice? But then if you say it's, if you're looking at the 14th Amendment, you look at what are the deprivations which he faces. Let me ask you a direct question concerning the 14th Amendment and the VTAC case. In VTAC, the prisoner was classified as mentally ill and forced to undergo behavior modification. And those two factors alone were sufficient in that case to raise liberty interest. And that's different from, in that case, he was removed from the prison and he did not have any type of choice whatsoever. He was removed, and that's what was done to him. In this case, he doesn't have to participate, A. There are possible sanctions in the future, but there's nothing in the record which shows that they would rise to the level of a protected property or liberty interest. This case was brought, and the allegations Mr. Renchensky raised below were all centered around the stigma of having to participate. These issues regarding loss of employment and possible other sanctions, for failing to participate, that's something that's been brought up after summary judgment. There's no evidence that that would happen. And from 2000 and no evidence that that would not happen. But then the court's putting itself making advisory opinions. If in the future it turned out that he received a sanction that was a protected property, that invoked a protected property interest, at that point you might be able to say due process attached. But even the misconducts, which the other side talks about, if he was given one of those misconducts, he would have a hearing in front of a hearing examiner, and he would be able to raise, you know, he could raise the issue that way, I really shouldn't be in this program. And then if somehow that wasn't resolved satisfactorily, then maybe he would have a valid lawsuit to raise that claim at that point. Let me get back to the Fifth Amendment. We're going between the Superior Court of Pennsylvania and the Supreme Court, so apparently there's something hanging out there. But it's my understanding, I don't know where I read it, in one of the briefs, that the whole purpose of the sex offender program is to have the prisoner admit to his wrongdoing, and then it's like the steps in Alcoholics Anonymous. Now, that being the case, he doesn't want to participate. I think he has a very valid Fifth Amendment issue,  Now, I go back to my other thing, that as I understand it, what the Department of Corrections says, we want him to apply, but he doesn't have to go through with it. Tell me about, what is the status of that now? How is that, the difference between, that you briefed, that he doesn't have to participate, all he has to do is something else. What is that? Well, they want him to submit to being evaluated. And I admit that there's not a major, and I don't even know if it's a legally significant distinction there, but that's the posture of what they want him to do. But it's our position, it's my position. One step further though, they say, you don't have to do anything more. Do they not say that? Just submit. He has a correctional plan. This sex offender treatment program is one part of this correctional plan, along with, you know, it might have anger management classes, it might have, you know, make sure you keep your cell clean, all sorts of different things. And to meet those, that correctional plan, he is in a sense required to do this. By not doing it, he doesn't meet that plan. It's the evaluation to determine whether he qualifies for, or he should get treatment, or to determine how bad a sex offender he is, or the intensity of the program. It's not clear, I don't think it's clear in the record, but the major point is to evaluate what type of level, how much of the program he would require, although the psychology department at any time could decide, wait, you don't need this program at all. As best you can determine though, the Department of Corrections wants him to undergo this program. That is the present status of things. But going back to the Fifth Amendment, our whole position is that he isn't required to say anything, because he can choose not to participate. Now that might have some consequences, or he might not be entitled to certain privileges, but under the McCune case, unless the other side can show specific detriment that would rise to the level of compulsion, or a protected property interest. The detriment is that he has to participate in a program where the essence of the program is to admit that you did a certain act. It's there. It's there in the program. I agree, Your Honor. That is part of the program, but it's a choice. And under McCune, it might not be. That is why, again, I'm just speaking for myself. I think that if a senior deputy attorney general says, we thought about this and we brought the action, but we have an old cranky old judge, and he has some ideas on this, and if that is carried by the panel, we're going to have a real problem with sexual component. And secondly, you won't be able even to administer this properly so long as there is a Fifth Amendment situation about admitting to an event that he has been in the Superior Court, then up to the Supreme Court. It's back to the Superior Court now. It's going up to the Supreme Court again. Why should we get involved under these circumstances? I think that that's the best solution to this case. I've got a couple of questions. You stated that the appellants had not raised the job law issue as part of the reasons why they did not want to be compelled or not compelled to do the SOTP or the transfer within the prison in the district court.  That's correct, Your Honor. Do you, in your brief, your red brief anywhere, say that we should not consider those factors? I think on footnote 12 on page 27, I think addresses that. Footnote? 12 on page 27. Renchensky, page 27. I've got a footnote 7 on page 28. I have footnote 12 on page 27. I have that, too, in my brief. This case was briefed twice, so maybe you have the wrong brief. Let me ask you, too. Losing a prison job under McCune is not enough for compulsion under the Fifth Amendment. Is it of significance in the due process context? No, Your Honor. And I believe the reason is if you're outside the prison context, you rely on a job for food and shelter and everything like that. But in prison, your basic needs are taken care of by the prison itself. So the same analysis in McCune applies to the due process consideration? And I think the plurality decision, those four judges actually basically adopted the Sandin approach, and it's Justice O'Connor, it's her fifth vote. So I think you can get guidance from the plurality decision, even if it might not be controlling in that area. But I think outside of the Fifth Amendment context, that Justice O'Connor would agree that due process would not apply. So she's looking at the compulsion issue. Okay. Mr. Hopkirk, thank you very much. Okay, thank you. And can I just add, I think if you look at Judge Easterbrook's opinion in the Grenier decision, I think I would disagree with the analysis of the other side, but it specifically talks about a crime where there's a sexual component but the person is never convicted of the sexual crime. Thank you. Mr. Theodore. Thank you, Your Honor. To start with, I would like to address the argument that the compulsion and particularly the consequences of refusing sex offender treatment were not raised below. Looking at page 186 of the joint appendix, which is part of the brief in opposition to defendant's motion to dismiss plaintiff's amended complaint, and of course, that motion to dismiss was converted into the motion for summary judgment that was granted, he said, in addition to the constitutional ramifications, there are collateral consequences. If the plaintiff physically attended any of the sex offender programs, which requires participation, which includes admitting guilt, discussions of sexual history, et cetera, he would be refused from the program for refusal to participate and sanctioned for that nonparticipation. Sanctioning would include loss of the plaintiff's job, which is his only source of income, consequently severely hampering his ability to litigate this and his criminal case. So I think he clearly raised the loss of his job. In addition, he repeatedly raised in many, many instances the compulsion under the self-incrimination clause of the Fifth Amendment. And I would also note that this Court relaxes the waiver rule in the context of pro se defendants. And of course, I was appointed on appeal. I was not representing him below. What would a hearing comprise of, in your view? A hearing, it would so it would he would have the opportunity to challenge the evidence. He would have notice of the hearing, opportunity to see the evidence before the hearing, an opportunity to challenge it, to give his own testimony and present his own and present his own evidence. And so in essence, he would have the opportunity to show two things. One sort of factually. Well, there won't be very much to it because he says he didn't do it. Is that right? That is correct. But I think he would have an opportunity to sort of cross-examine, you know, and challenge the coroner's report, as well as to argue that under the prison's own procedures. He's not looking for a new trial to establish his innocence, is he? No. Not under, you know, his due process claim only seeks a hearing. He's not seeking a complete new trial. And I would also, you know, note, Your Honor, as you were getting at initially, this has been 25 years. He's never getting out of prison unless, of course, he's found to be innocent of the whole thing to start with. And in those 25 years, there's no allegation that he caused any sexual trouble in prison. There's no allegation that there's any need for this program because of his conduct in prison. So in the sense he's never getting out, there's no need for this program in order to protect society. Do you think he's being singled out for some reason? Or are all inmates who have had a sexual component defense being required to undergo sex treatment or sex offender treatment? Well, since there's been no discovery in this case, Your Honor, I can't speak to all inmates, of course. But for Renchensky, I think he is being singled out. I think if you look at the record, what happened here was essentially he didn't get along with sort of an ordinary block counselor, Defendant Williams. Defendant Williams then marked him down for a host of programs, not only sex offender programs. He added just a whole list of programs to his correctional plan, three of which were these three sex offender programs. And then that decision has just been sort of rubber stamped at each level up the prison hierarchy. He complained to the chief psychologist, Defendant Sidler, who just said that he was going to affirm Defendant Williams' decision to add sex offender status. So at bottom, this is a disagreement with an ordinary block counselor, which I think sort of the wall of prison officials deciding that they need to back each other up and be consistent with each other has deprived him of any real opportunity to challenge it or have a decision by someone who's a specialist in these sorts of issues, as opposed to an ordinary prison guard. The other thing I would mention, just because the appellees argued what appears to be something similar to ripeness, is that in this case, as you note, sanctions are threatened by the policy. These are very severe sanctions. The administrative policy specifically suggests or says that he can have 90 days of disciplinary custody and loss of his job. They don't disavow those. And this court, we cited in our reply brief a case called Florio, in which this court held that the refusal to disavow sanctions, which were allowed by statute or allowed by law, makes a case right for decision. Let me ask you another question. If there were a hearing on the issue of sexual offender, would it be determined, one, was there a sexual component in Mr. Rendensky's crime that should put him in the classification of sex offenders, or two, is he the type of prisoner for whom sex offender treatment will be beneficial or a combination of one and two? Well, I think it would be the former, Your Honor. I think the treatment programming itself incorporates an assessment as to his risk level, which is, I think, the second thing, sounds like the second thing that you were getting at. So the hearing we're asking for is the first, whether he is really a sex offender in the first instance. In view of the sexual component to the alleged sexual component. The alleged sexual component. And this sexual component was not even, it's not just that it wasn't found by a jury. It wasn't even in the charging documents. He was never charged with this alleged sexual component. The first we've heard of it is in this case. But the facts of the crime then can be considered, not in a retrial, but in the autopsy report and other factors in the determination, then made, is he a sex offender or not? Yes, Your Honor. Although he would also have a claim that even an adverse determination of facts under their own policies, you know, he would have not one, the factual argument based on the factual record, and two, an argument that he doesn't fit treatment based on their own policies. You don't have to be convicted of a drug offense in order to be compelled to participate in drug treatment, do you? You do not, Your Honor. But again, I think that's just because the stigma of being a drug offender is so much less than the stigma of being a sex offender that it doesn't rise to the level of a protected liberty interest under the new process clause. Theodore, thank you very much for your argument. And Mr. Hopkirk, thank you very much. We'll take the case under advisement. Thank you, Your Honor. Mr. Theodore, are you a court appointed? Yes, I am, Your Honor. Well, thank you very much for volunteering your services. I agree with Judge Schuante. This was very well briefed and well argued by both of you. Thanks. I agree. Thank you. We add our thanks. Thank you. Thank you, Your Honor. Well done.